UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| B.H., a Minor Student,<br>by and through his parent L.H.,<br>and L.H., individually<br><br>　　　　　Plaintiffs<br><br>　　　　　v.<br><br>OBION COUNTY<br>BOARD OF EDUCATION<br>d/b/a OBION COUNTY SCHOOLS<br><br>　　　　　Defendant | CASE NO:_____<br><br><br><br><br><br>JURY DEMANDED |

# COMPLAINT

COME THE PLAINTIFFS, B.H., a minor student, by and through his parent L.H., and L.H., individually, and file this Complaint against the Defendant, OBION COUNTY BOARD OF EDUCATION d/b/a OBION COUNTY SCHOOLS. They show:

## I.   PARTIES, JURISDICTION & VENUE

1. This action is brought by B.H. a minor student, by and through his parent, L.H., and L.H., individually ("Plaintiffs").[1]  Plaintiffs are citizens and residents of Obion County, Tennessee.

2. Defendant, Obion County Board of Education d/b/a Obion County Schools

---

[1] Although known to Defendant, Plaintiffs are not expressly named herein by their given names because B.H. is a minor whose privacy guarantees are provided in Fed. R. Civ. P. 5.2(a)(3).

1

("Defendant") has offices at 1700 N. Fifth Street, Union City, Tennessee 38261. Defendant is a recipient of federal financial assistance within the meaning of Section 504, 29 U.S.C.§ 794(b)(2)(B) and is a "public entity" as defined by the ADA, 42 U.S.C.§ 12131(1). Accordingly, Defendant is responsible for upholding the rights of children and their parents under Section 504 and the ADA.

3. Defendant is also an employer of more than fifteen persons, operating in Obion County, Tennessee, who acting under color of law, deprived Plaintiffs of a Constitutional right set forth herein below.

4. Specifically, this action is brought by Plaintiffs under Title II of the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* ("ADA"), amended by the Americans with Disabilities Act (ADA-AA) with an effective date of January 1, 2009, which at § 12203 prohibits retaliation, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 *et seq.* ("Section 504"), including the conforming amendment of the ADA-AA which changes the definition of "disability" under §504 to conform to the definition of "disability" under ADA-AA. Both the ADA and Section 504 prohibit discrimination and retaliation against persons with disabilities, or persons who advocate on behalf of a student's education. This is also brought pursuant to the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983 which prohibits retaliation in response to the threat of filing a lawsuit or to speech made as a matter of public concern.

5. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6. These claims do not require exhaustion under the Individuals with Disabilities Education Act (IDEA) as they are non-educational injuries caused by discrimination

and retaliation, and thus, are not claims advancing a denial of a free appropriate public education.

7. Venue is proper because the alleged acts in this lawsuit occurred in this judicial district and/or because the Defendant conducts business in this judicial district.

## II. FACTUAL BASIS FOR SUIT

8. L.H.'s son, B.H., is currently a Kindergarten student at Black Oak Elementary within Obion County Schools.

9. B.H. attended Black Oak Elementary for pre-K (the 2016-2017 school year) under the terms of an Individual Education Program ("IEP") pursuant to the Individuals with Disabilities in Education Act ("IDEA").

10. B.H. is eligible for an IEP under the disability classification of Other Health Impairment ("OHI") based upon his recognized diagnoses of Attention-Deficit Hyperactivity Disorder ("ADHD"), Disruptive Mood Dysregulation Disorder, Post-Traumatic Stress Disorder, and Victim of Sexual Abuse (from an adult male family member).

11. Accordingly, B.H. is a protected student with a disability under Section 504, 29 U.S.C. §794, *et seq.* and the ADA, 42 U.S.C.§ 12101, *et seq.*, because he is substantially limited in major life activities including, but not limited to, concentration, learning, sitting, thinking, cooperating, interacting with his peers, and controlling his impulses.

12. During recess on the playground the morning of May 15, 2017, B.H. and another male pre-K classmate (hereinafter referred to as "John Doe")[2] were inside a playhouse

---

[2] Although known to Defendant, the other child is named herein by the

alone without direct visual supervision.

13.  The children's teacher, Melissa Jones, noticed B.H. and John Doe were unsupervised in the playhouse.  She spoke with the boys and allegedly learned that B.H. had stuck his hands down the pants of John Doe.

14.  Later, John Doe's father acknowledged that John Doe had done the same to B.H.— Doe put his hands down B.H.'s pants.

15.  Unlike B.H., John Doe did not have any recognized disabilities under Section 504, Title II of the ADA, or IDEA, and certainly not any similar to those of B.H.'s Disruptive Mood Dysregulation Disorder and PTSD from prior sexual molestation.

16.   B.H.'s mother, L.H., learned of the playground incident on May 15, 2017 when she picked up B.H. at approximately 2:00 p.m.

17.  L.H. went to the principal's office where she was informed by Black Oak Elementary Principal, Travis Johnson, and B.H.'s teacher, Melissa Jones, that both B.H. and John Doe were touching each other inappropriately in the playhouse at recess. B.H. had been assigned to the principal's office the remainder of the day.

18.  Principal Johnson told L.H. that he intended to punish B.H. further for the inappropriate touching, and therefore, B.H. would not be allowed to participate in the school's "Water Day" festivities scheduled the following day (May 16, 2017).

19.  L.H. expressed that B.H. cannot always control his actions, including impulsivity.  L.H. said the touching was certainly inappropriate, but a punishment for an uncontrolled action seemed inappropriate too.

---

pseudonym John Doe because he is a minor whose privacy guarantees are provided in Fed. R. Civ. P. 5.2(a)(3).

20. An hour later, L.H. returned to meet with Principal Johnson again, this time arranging for her sister, a special education teacher, to advocate for B.H. on the phone. Together, they explained that "Water Day" might not seem like a big deal to adults, but to B.H., this would be a significant emotional blow for an impulsive act outside his control. Given the lack of supervision of the two boys, they asked Principal Johnson for reconsideration.

21. Principal Johnson responded by explaining to L.H. that, following their first meeting an hour earlier, he had contacted the Obion County Board of Education ("Board of Education"). The Board of Education instructed him to suspend B.H. not just for Water Day, but for the remainder of the school year (May 16-19, 2017).

16. L.H. and her sister stated their belief that a suspension for conduct on which a child cannot control is illegal. Principal Johnson stated he must follow the instruction of the Board, and that instruction was "final."

17. B.H.'s suspension for the remainder of the school year (May 16-19, 2017), prevented him from participating in: (1) the end of year festivities with his pre-K peers; (2) Water Day; (3) The class-wide music program performed by his classmates; and (4) all remaining events at school.

18. On May 17, 2017, only two days after the meetings with Principal Johnson, the Department of Children's Services (DCS) appeared at L.H.'s home following a report concerning the welfare of B.H.

19. The DCS investigator's first line of questioning to L.H. was regarding the incident occurring on the playground two days prior with B.H. and John Doe.

20. The DCS investigator revealed that it was reported to DCS that L.H. was

5

involved in substance abuse.  Consequently, DCS requested, and L.H. immediately provided, a 12-panel urine drug test on thegt spot.  It was, of course, negative.

21.   L.H., being a nurse, found allegations made to DCS that she was involved in substance abuse, to be deliberately false and outrageous.

22.   The false allegations resulted in intrusive government action against L.H., which caused her distress and fear.  *See* Tenn. Code Ann. § 37-1-406.  As a Licensed Practical Nurse, the false allegations exposed L.H. to potential loss of her nursing license, and thus, her livelihood.  *See* Tenn. Comp. R. & Regs. R. 1000-02-.04(4); Tenn. Code Ann. § 63-7-115.  In fact, to date, L.H. has still yet to be notified that the investigation by DCS has been officially closed against her.

23.   The DCS reports by Defendant were not made in good faith and were retaliation against L.H. for her advocacy efforts on behalf of B.H. and his disability.  Thus, the action would deter a person of ordinary firmness from challenging the school's proper handling of discipline for a child with disabilities and discriminating against a child with disabilities with punishment not provided to the child without disabilities or different disabilities.

24.   Later, still on May 17, 2017, the same day L.H. received the visit from DCS, L.H. learned that B.H. had received harsher and disproportionate discipline than John Doe for the same offense.  Unlike B.H., John Doe *was* allowed to participate in Water Day and was not suspended.

25.   In June 2017, L.H. raised the issue of different and unequal discipline. Defendant admitted to unequal discipline, advising that John Doe was only punished by being required to sit out for ten to fifteen minutes of Water Day on May 16, 2017.

### III. CAUSES OF ACTION

#### COUNT ONE: 29 U.S.C. § 794 DISCRIMINATION & RETALIATION IN VIOLATION OF SECTION 504 OF THE REHABILIATION ACT OF 1973

26.  Plaintiffs reallege each paragraph above as if fully set forth herein verbatim.

27.  Defendant has acted with deliberate indifference, bad faith, gross misjudgment and/or with intentional discrimination[3] to the rights of L.H. and B.H. secured by Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 and 34 C.F.R. § 104.4, by:

   a) Denying B.H., because of the nature and severity of his disabilities, the opportunity to participate in, and benefit from, federally assisted education services, programs and activities, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(b)(1)(i);

   b) Subjecting B.H. to discrimination on the basis of the nature and severity of his disability, in violation of 29 U.S.C. § 794(a) and 34 C.F.R. § 104.4(a);

   c) Using criteria or methods of administration that have the effect of subjecting B.H. to discrimination on the basis of disability, in violation of

---

[3] While Plaintiffs contend throughout that Defendant's action certainly rise to the level of intentional actions/inactions, hence why they are pled as such, recent authority from the Eastern District of Tennessee has clarified that intentionality is not required to prove damages under Section 504 and Title II of the ADA. *I.L. v. Knox Cty. Bd. of Educ.*, 2017 U.S. Dist. LEXIS 92257, *46 (E.D. Tenn. June 15, 2017) (internal citations omitted) ("There is nothing to indicate that a plaintiff must ever prove intentional discrimination—or deliberate indifference—under Title II and § 504. What's more, the Supreme Court has upheld a damages award in a Title II case involving no intent element. And while eight courts of appeals require some mental state before awarding damages under Title II and § 504, these decisions have misconstrued Supreme Court case law. Taylor need not show that the Department of Education acted with deliberate indifference to win damages. So she need not show it to win an injunction.").

        34 C.F.R. § 104.4(b)(4); and

    d)    Taking adverse actions against B.H. and L.H. in retaliation for L.H.'s protected advocacy for B.H.'s legal rights in violation of 34 C.F.R. § 100.7.

28.    Defendant acted with deliberate indifference, bad faith, gross misjudgment and/or with intentional discrimination to B.H.'s rights under 504 by discriminating against B.H. on the basis of his disability in suspending B.H. for the remainder of the 2016-2017 school year, when his peer without disabilities or different disabilities, received much lesser punishment (sitting out 10 to 15 minutes) for the same offense.

29.    Further, the false report to DCS that L.H. was involved in substance abuse occurred only after L.H.'s advocacy for her son's federally protected rights to be free from discrimination on the basis of his disabilities. Accordingly, Defendant's reports to DCS were made in retaliation for Plaintiffs' exercise of her son's rights in violation of Section 504.

30.    Plaintiffs seek monetary damages from Defendant to include all out-of-pocket expenses and damages for the emotional distress including physical manifestations of that stress, humiliation, and embarrassment suffered by B.H. and L.H. due to Defendant's deliberate actions and inactions. They also seek their attorneys' fees and costs as well as injunctive relief to prohibit further discrimination and retaliation against B.H. and L.H. in the future.

<u>COUNT TWO</u>: 42 U.S.C. § 12131 DISCRIMINATION AND RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 WITH AMENDMENTS 2009

31.    Plaintiffs reallege each paragraph above as if fully set forth herein verbatim.

32.    Title II of the ADA covers programs, activities, and services of public entities.

33. Defendant is a public entity because it is a state or local government or a department or instrumentality of a State or local government.

34. Defendant had knowledge of B.H.'s disabilities entitling him to protection under the ADA.

35. Title II of the ADA prohibits discrimination against any "qualified individual with a disability." It also prohibits retaliation against persons with disabilities, or persons who advocate on behalf of a student with a disability's rights to education.

36. Defendant has intentionally, purposefully and/or with deliberate indifference violated the rights of B.H. secured by the Americans with Disabilities Act of 1990 with Amendments, 42 U.S.C. § 12131 *et seq.* and 28 C.F.R. § 35.130, by:

   a) Excluding B.H. from participating in and denying him the benefit of Defendant's services, programs, and activities on the basis of his disability, in violation of 28 C.F.R. § 35.130(a);

   b) Using criteria or methods of administration that have the effect of subjecting B.H. to discrimination on the basis of his disability, in violation of 28 C.F.R. § 35.130(b)(3)(i); and

   c) Refusing to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, in violation of 28 C.F.R. § 35.130(b)(7); and

   d) Taking adverse actions against B.H. and L.H. in retaliation for L.H.'s protected advocacy for B.H.'s legal rights in violation of 42 U.S.C. § 12203(a).

37. Defendant acted with deliberate indifference, bad faith, gross misjudgment and/or with intentional discrimination to B.H.'s rights under 504 by discriminating

against B.H. on the basis of his disability in suspending B.H. for the remainder of the 2016-2017 school year, when his peer without disabilities or different disabilities, received much lesser punishment (sitting out 10 to 15 minutes) for the same offense.

38.     Further, the false report to DCS that L.H. was involved in substance abuse occurred only after L.H.'s advocacy for her son's federally protected rights to be free from discrimination on the basis of his disabilities.  Accordingly, Defendant's reports to DCS were made in retaliation for L.H.'s exercise of her son's rights in violation of the ADA.

39.     Plaintiffs seek monetary damages from Defendant to include all out-of-pocket expenses and damages for the emotional distress including physical manifestations of that stress, humiliation, and embarrassment suffered by B.H. and L.H. due to Defendant's deliberate actions and inactions.  They also seek their attorneys' fees and costs as well as injunctive relief to prohibit further discrimination and retaliation against B.H. and L.H. in the future.

### COUNT THREE: 42 U.S.C. § 1983 RETALIATION IN VIOLATION OF THE FIRST & FOURTEENTH AMENDMENTS

40.     Plaintiffs reallege each paragraph above as if fully set forth herein verbatim.

41.     Title 42 U.S.C. § 1983 of the United States Code provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory . . . , subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42.     The First Amendment to the United States Constitution, applicable to the states

and their subdivisions through the Fourteenth Amendment, grants citizens the right to petition the government for grievances. "The right of access to the courts is indeed but one aspect of the right to petition." *California Motor Transport, Inc. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

43. On behalf of B.H., L.H. engaged in protected activity under the First Amendment when she and her sister advocated for B.H.'s rights under Section 504 and the ADA to be free from discriminatory discipline.

44. In response to Plaintiffs' aforementioned legally protected concerns under both the First Amendment and Section 504 as well as the ADA, Defendant, acting under color of state law to deprive Plaintiffs of their rights secured by federal law, did engage in retaliation against Plaintiffs by reporting to DCS that L.H. was involved in substance abuse. The retaliatory reporting to DCS by Defendant was in bad faith and in deliberate indifference to Plaintiffs' rights.

45. Moreover, the adverse action of reporting L.H. to DCS would certainly deter a person of ordinary firmness and was causally connected to the protected conduct identified above as it was done right after Plaintiffs engaged in the protected activity.

## IV.  RELIEF REQUESTED

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that this Court award the following relief:

A. Finding that Defendant discriminated against B.H. based upon his disability by suspending him for the remainder of the 2016-2017 school year in violation of Section 504 of the Rehabilitation Act of 1973 and Title II of the ADA;

B. Finding that Defendant impermissibly retaliated against Plaintiffs by

suspending B.H. and reporting L.H. to DCS in violation of Section 504 of the Rehabilitation Act of 1973, Title II of the Americans with Disabilities Act, and 42 U.S.C. § 1983 First Amendment to the United States Constitution;

C.     A permanent injunction enjoining Defendant from any further retaliation against Plaintiffs;

D.     Awarding Plaintiffs declaratory, equitable, nominal, and compensatory damages relief for violations of the United States Constitution, Section 504 and the ADA;

E.     Awarding prejudgment interest at the maximum rate permitted by law on all sums awarded;

F.     Awarding Plaintiffs their reasonable attorneys fees and costs; and

G.     Awarding such other relief at law or equity which may be deemed appropriate.

    Respectfully submitted,

    **THE SALONUS FIRM, PLC**

    /s *Jessica F. Salonus*
    JESSICA F. SALONUS (28158)
    139 Stonebridge Boulevard
    Jackson, Tennessee 38305
    Telephone: (731) 300-0970
    jsalonus@salonusfirm.com

    **GILBERT MCWHERTER SCOTT BOBBITT, PLC**
    JUSTIN S. GILBERT #017079
    200 W. Martin Luther King Blvd,
    10th Floor, Suite 106
    Chattanooga, TN 37402
    Telephone: 423-499-3044
    Facsimile: 731-664-1540
    jgilbert@gilbertfirm.com

    *ATTORNEYS FOR PLAINTIFFS*