IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| B.H., A Minor Student, by and through His parent L.H., and L.H., Individually, <br><br> Plaintiffs, <br><br> V. <br><br> OBION COUNTY BOARD OF EDUCATION d/b/a OBION COUNTY SCHOOLS, <br><br> Defendant. | No. 18-cv-01086-STA-jay |

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

Plaintiff B.H., a minor, has brought this action through his parent, L.H., and L.H. has brought the action in her individual capacity against Obion County Board of Education d/b/a Obion County Schools. Plaintiffs have asserted five claims: discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, discrimination and retaliation under Section 504 of the Rehabilitation Act, 29 U.S.C. §794 *et seq.*, and retaliation under the First and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983. Defendant has filed a motion for summary judgment (ECF No. 44), and Plaintiffs have filed a response to the motion. (ECF No. 49.) For the reasons set forth below, Defendant's motion is **DENIED**.

### Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the Court must review all the evidence and draw all reasonable inferences in favor of the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party, and it "may not make credibility determinations or weigh the evidence." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014). These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## Statement of Material Undisputed Facts[1]

Pursuant to Local Rule 56.1(a), Defendant has prepared a statement of facts "to assist the Court in ascertaining whether there are any material facts in dispute." (ECF No 44-2.) Plaintiffs

---

[1] The facts are stated for the purpose of deciding this motion only.

have responded to Defendant's statement and have attached their own statement of undisputed facts. (ECF No. 49-1.) Defendant has not responded to Plaintiffs' statement of undisputed facts in a timely fashion.[2] Therefore, the Court will accept Plaintiffs' facts as being undisputed.

A fact is material if the fact "might affect the outcome of the lawsuit under the governing substantive law." *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015) (citing *Wiley v. United States,* 20 F.3d 222, 224 (6th Cir. 1994) and *Anderson,* 477 U.S. at 247–48). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248. For purposes of summary judgment, a party asserting that a material fact is not genuinely in dispute must cite to particular parts of the materials in the record and show that the materials fail to establish a genuine dispute or that the adverse party has failed to produce admissible evidence to support a fact. Fed. R. Civ. P. 56(c)(1). As the non-moving party, Plaintiffs must respond to Defendant's statement of fact "by either (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed." Local R. 56.1(b). Additionally, Plaintiffs may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

When Plaintiffs assert that a genuine dispute of material fact exists, Plaintiffs must support their contention with a "specific citation to the record." Local R. 56.1(b). If Plaintiffs fail to demonstrate that a fact is disputed or simply fail to address Defendant's statement of facts properly, the Court will "consider the fact undisputed for purposes" of ruling on the motion. Fed. R. Civ. P. 56(e)(2); *see also* Local R. 56.1(d) ("Failure to respond to a moving party's statement of material

---

[2] Defendant responded to Plaintiffs' statement of undisputed facts on October 14, 2019 (ECF No. 52), which is thirty-two days after the filing of Plaintiffs' statement and, thus, is untimely. *See* Fed. R. Civ. P. 56(c) ("Replies must be filed within 14 days after the response is served.")

facts, or a non-moving party's statement of additional facts, within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment."). Under Rule 56 of the Federal Rules of Civil Procedure, the Court "need consider only the cited materials" but has discretion to "consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

In the present case, Plaintiffs have made various objections regarding Defendant's statement of facts that purport to show the subjective state of mind of the parties at various times during the relevant events, and they object to any "fact" that is actually a legal conclusion or is an attempt to invade the province of the jury. These objections are noted below.

Undisputed Facts

During the 2016-2017 school year, B.H. was a Pre-K student at Black Oak Elementary School in Obion County, Tennessee. B.H. attended Pre-K pursuant to the terms of an Individual Education Program ("IEP") under the Individuals with Disabilities in Education Act.

B.H. has Attention Deficit Disorder/Attention-Deficit Hyperactivity Disorder Type III (ADD/ADHD Type III), Post-Traumatic Stress Disorder, and Disruptive Mood Dysregulation Disorder, and he is the victim of sexual abuse by an adult male family member.

During the 2016-2017 school year, Melissa Jones was the Pre-K teacher at Black Oak Elementary School.

Throughout the 2016-2017 school year, B.H. had some disciplinary issues in the Pre-K classroom; the parties dispute the severity of those issues.[3]

---

[3] Defendant maintains that B.H. "consistently" had disciplinary issues, including "aggressive behavior, which included slamming things, hitting other children, causing other children to fall down, throwing food at other children, and biting other children" (ECF No. 44-2, paras. 5 – 6), while Plaintiffs point out that "B.H. was only seriously disciplined once before the May 2017 playground incident, when he was not allowed to go to a magic show" and, "[o]ther than this, his

4

At the beginning of the 2016-2017 school year, B.H.'s mother, L.H., advised Ms. Jones that B.H. had threatened to kill and stab her; L.H. informed the school that B.H. had made these threats in the context of why he received psychological treatment earlier in the year at Vanderbilt University, which according to L.H., greatly helped, and these behaviors subsided. Because of these behaviors, L.H. kept sharp objects out of B.H.'s reach at home.

L.H. further advised Ms. Jones that B.H. would leave bruises on her, pull her hair, kick her, and curse at her when angry; L.H. informed the school that B.H. had these behaviors in the context of why he received psychological treatment earlier in the year at Vanderbilt University, which according to L.H., greatly helped, and these behaviors subsided.

On May 15, 2017, Ms. Jones allowed her students to go to the playground for recess. During recess, Ms. Jones saw B.H. playing by the sandbox. A short time later, she noticed that B.H. was no longer at the sandbox.[4]

Ms. Jones saw B.H. and another student, "John Doe," in the open top playhouse located on the playground. When Ms. Jones walked over to the playhouse, she noticed that B.H. and John Doe were sitting crisscross on the ground. Based on what she saw, she believed that the students were engaged in inappropriate behavior.

Ms. Jones pulled John Doe to the side and asked him what was going on. John Doe told her that B.H. was "touching him in his pants." John Doe's father later acknowledged that John Doe also put his hands down B.H.'s pants.

---

behavior warranted only normal childhood punishments, like time outs and not being allowed to go to recess. He was never given in-school or out-of-school suspensions." (Pls' Resp. to Def's St. of Mat. Fcts, paras 5- 6, ECF No. 49-1.)

[4] Plaintiffs dispute the extent to which B.H. was being supervised on the day in question and whether Ms. Jones was adequately watching him and "noticing" his movements. (*Id.* at paras. 14 – 15.)

Ms. Jones then took B.H. to the school counselor, Melissa Logan. B.H. was later taken to the principal's office and remained there until L.H. picked him up after school. B.H. admitted to Ms. Logan that he had put his hands down John Doe's pants.

Ms. Logan contacted John Doe's parents to explain the situation, and John Doe's father picked him up from school.

When L.H. arrived at school to pick up B.H., Ms. Jones asked L.H. to meet with her and the school principal, Travis Johnson, about the situation. L.H. cried during the meeting. Mr. Johnson told L.H. that B.H. would not be allowed to go to "Water Day" the next day as punishment for the incident.[5]

Shortly after L.H. left the meeting and the school, she returned. L.H. was upset and was crying. She stated that she did not think taking Water Day away from B.H. was an appropriate punishment in light of his disabilities.

During the second meeting, Mr. Johnson advised L.H. that B.H. would be suspended for the remainder of the school year at the recommendation of the Special Education Supervisor, Mary Lynn Dodson. L.H. was upset and told Ms. Jones and Mr. Johnson that she would be contacting an attorney and advocate to ensure that her son's rights were adequately protected. Mr. Johnson then contacted Ms. Dodson who read B.H.'s IEP to L.H. After Ms. Dodson read B.H.'s IEP, L.H. requested another meeting so that she could get his IEP changed.

The next day, May 16, 2017, Ms. Jones contacted the Tennessee Department of Children's Services ("DCS") and reported the incident that occurred on the playground.[6] Ms. Jones reported

---

[5] "Water Day" was a day at the end of the school year during which the Pre-K students were permitted to play on a slip-and-slide and play other water-related games.

[6] As discussed below, Plaintiffs contend that Ms. Jones made the report in retaliation for L.H.'s advocacy on behalf of B.H. and that the incident on the playground did not necessitate a report to

to DCS that B.H. had a history of being sexually abused and that L.H. had advised the school that B.H. had displayed sexual behavior with other children. Ms. Jones also reported that B.H. had admitted putting his hands down John Doe's pants; however, Ms. Jones did not report that John Doe had also admitted to putting his hands in B.H.'s pants.

During Ms. Jones' conversation with the DCS representative, she was asked whether there were any concerns about substance abuse in B.H.'s home. Ms. Jones reported that L.H. had advised school officials that B.H.'s father had issues with substance abuse at the beginning of the school year but, during the prior day's meeting, L.H. stated that he was "not doing that stuff anymore."[7] Ms. Jones described L.H.'s behavior as being "erratic" during the May 15, 2017 meeting and reported that she was concerned that L.H. might be using drugs.

On May 17, 2017, a DCS representative visited the home of L.H. and B.H. The representative inquired about the incident that occurred on the playground. The representative advised L.H. that the report stated that "the mother appeared to be under the influence of substance abuse."

As a result of the allegations to DCS of drug use on the part of L.H. made by Ms. Jones on May 16, 2017, the DCS representative requested that L.H. submit to a drug screen. On the day of the visit, the representative administered a urine drug screen to L.H. Her results were negative for drug use. L.H. has never had issues with substance abuse. DCS closed the case against L.H. on July 5, 2017.

---

DCS. They also contend that, even if the incident did require a report, Ms. Jones' "report went far beyond just the playground incident as Ms. Jones made outrageous, false, and irrelevant accusations about Plaintiffs, including that L.H. was abusing drugs." (*Id.* at para. 38.)

[7] (*Id.* at para. 45.)

Mr. Johnson conferred with Mary Lynn Dodson, the special education supervisor, regarding the inappropriate sexual behavior between B.H. and John Doe. Mr. Johnson advised Ms. Dodson that he and Ms. Jones had determined that B.H. initiated the contact and was the aggressor in the incident of inappropriate sexual behavior. They reached their conclusion that B.H. was the aggressor because (1) B.H. had a history of being the victim of child sexual abuse; (2) L.H. had advised Ms. Jones that B.H. had displayed sexual behavior towards other children in the past; and (3) the school had not evidence that John Doe had a history of displaying sexual behaviors toward other children.

Because B.H. was determined to be the aggressor, Ms. Dodson recommended to Mr. Johnson that B.H. be suspended for the remainder of the school year. B.H. was suspended from May 16, 2017, through May 19, 2017, which was the remainder of the school year. This suspension included Water Day.

John Doe was required to sit out of Water Day for approximately ten to fifteen minutes as a result of the incident on the playground. Defendant contends that B.H. was given a harsher punishment because Ms. Jones and Mr. Johnson determined that he was the aggressor.

Because of the school suspension, B.H. suffers from low self-esteem, fears being "the bad kid," and "thinks he's the only one that's going to get in trouble" when something happens.

## Analysis

### Discrimination Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *see also Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 681 (6th Cir. 2016)

(quoting § 12132). Section 504 of the Rehabilitation Act of 1973 provides, "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. § 794(a). "[A] plaintiff seeking to state a claim under either the ADA or § 504 against a school receiving federal financial assistance must show that he or she is (1) disabled under the statute, (2) 'otherwise qualified' for participation in the program, and (3) being excluded from participation in, denied the benefits of, or subjected to discrimination under the program by reason of his or her disability." *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 453 (6th Cir. 2008). Claims brought under the ADA or § 504 are generally analyzed together because they "require proof of substantially similar elements." *Id.* at 453.[8]

For the purpose of deciding this motion only, Defendant concedes that B.H. is disabled under both the ADA and § 504; he was otherwise qualified for participation during the remainder of the 2016-17 school year in the Pre-K class at Black Oak Elementary School pursuant to the terms of his IEP; and Obion County Board of Education received federal financial assistance during the 2016-2017 school year. (Mot. for Summ. Judg. pp. 8-9, ECF No. 44-1.) Defendant argues, however, that B.H. was not excluded from a program or activity on the basis of his disability but, instead, because he was the aggressor in the May 15, 2017 incident with John Doe.

According to Defendant, Mr. Johnson and Ms. Jones concluded that B.H. was the aggressor because he had a history of being the victim of child sexual abuse and had displayed sexual

---

[8] *See also Gohl*, 836 F.3d at 690 ("Apart from § 504's limitation to denials of benefits 'solely' by reason of disability and its reach of only federally funded—as opposed to 'public'—entities, the reach and requirements of both statutes are precisely the same." (citation omitted)).

behavior toward other children in the past, whereas John Doe did not have such a history. Defendant argues that "it was not B.H.'s disability that caused his suspension . . . it was the fact that he was the aggressor in an episode of inappropriate sexual behavior with another student." (*Id.* at p. 10.)

It is undisputed that B.H. has diagnoses of "Victim of Sexual Abuse" and "PTSD related to the sexual trauma." The trier of fact could find that Defendant determined B.H. to be the aggressor (which led to his suspension from school) because of his disability. That is, the trier of fact could find that the only reason Defendant suspended B.H. was because of B.H.'s history as a victim of sexual abuse. Defendant knew that B.H. and John Doe were both participants in the playground incident; the trier of fact could find that the only difference between B.H. and John Doe was B.H.'s disability as a victim of child sexual assault and that this was the reason for his harsher punishment. If so, the trier of fact could find that this constitutes direct evidence of discrimination. *See Coffman v. Robert J. Young Co.*, 871 F. Supp. 2d 703, 714 (M.D. Tenn. 2012) ("Direct evidence is evidence that 'if believed, requires the conclusion that unlawful discrimination was at least a motivating factor' in the adverse [] action.")[9] Accordingly, Defendant's motion for summary judgment on Plaintiffs' discrimination claims is denied.

Retaliation Claims

Plaintiffs have not presented direct evidence of retaliation; therefore, their retaliation claim falls under the *McDonnell Douglas* burden-shifting approach. *See A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013). To make a prima facie showing of retaliation under the ADA and § 504, Plaintiffs must show that (1) they engaged in activity protected under the ADA

---

[9] Because there is direct evidence of discrimination, there is no need for the Court to conduct the burden shifting analysis under *McDonnell Douglas*.

and § 504; (2) Defendant knew of this protected activity; (3) Defendant then took adverse action against Plaintiffs; and (4) there was a causal connection between the protected activity and the adverse action. *Id.* If a prima facie case is established, the defendant must articulate a legitimate non-retaliatory reason for its adverse action, after which the burden shifts back to the plaintiff to show that the proffered reason was not the true reason, but merely a pretext for retaliation. *Harris v. Metro. Gov't of Nashville & Davidson Cty.*, 594 F.3d 476, 485 (6th Cir. 2010).

As for the first element of the prima facie case, Plaintiffs have pointed to evidence in the record from which the trier of fact could find that L.H. engaged in protected activity. There is evidence that L.H. told Principal Johnson and Ms. Jones that she believed that B.H.'s IEP was not being followed in that B.H. was not getting proper supervision. Advocacy by a parent about their child's education plan is protected activity. *See, e.g., Wenk v. O'Reilly*, 783 F.3d 585, 594 (6th Cir. 2015) ("Schott does not contest that the Wenks' advocacy about M.W.'s educational plan is protected activity.") Additionally, L.H. opined that B.H. was being punished because of his disability. Opposing disability discrimination is also a protected activity. *See Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014) ("Protected activity typically refers to action taken to protest or oppose a statutorily prohibited discrimination." (citations omitted)).

Also, L.H.'s request that B.H. be punished less harshly because his actions were caused by his disability could be found to be a request for a reasonable accommodation of the school's disciplinary policy. Requesting a reasonable accommodation is a protected activity. *See Baker v. Windsor Republic Doors*, 414 F. App'x 764, 776–77 & n. 8 (6th Cir. 2011) (noting that the Sixth Circuit has accepted that the showing of a good-faith request for reasonable accommodations is a protected act for purposes of an ADA retaliation claim). Finally, L.H. stated that she was

considering contacting a lawyer and advocate for B.H. Federal law allows for advocates and representatives to be part of a student's educational plan meetings. 20 U.S.C. § 1414(d)(1)(B).

The trier of fact could also find that Defendant knew about this protected activity. Defendant acknowledges that, on May 15, 2017, L.H. "advised Ms. Jones and Mr. Johnson that she did not think it was fair to take the whole Water Day away from [B.H.] for something that's related to his disability." (Mot. for Summ. Judg. p. 15, ECF No. 44-1.) Additionally, Defendant does not dispute that "once L.H. was advised that B.H. would be suspended for the remainder of the school year, she raised her voice and threatened to get a lawyer and advocate to sue the school." (*Id.*)

Next, there is evidence from which the trier of fact could find that Defendant took an adverse action against Plaintiffs by reporting L.H. to DCS. "Having a government official appear at their door armed not only with the power to take their disabled child away but also with allegations that they are actively and nearly fatally abusing that child would surely be enough to dissuade many reasonable parents from seeking accommodations at school." *A.C.*, 711 F.3d at 698. The trier of fact could also find that Defendant also took an adverse action against B.H. by increasing his punishment following L.H.'s advocacy. Reprisal for the protected activity of a related person can constitute retaliation. *See Thompson v. N. Am. Stainless*, 562 U.S. 170, 174-75 (2011).

Next, the trier of fact could find a causal connection between L.H.'s advocacy and the DCS report. "[A] report of child abuse - even if it is not materially false and there is evidence in the record that could support a 'reasonable basis' to suspect child abuse - is actionable if the reporter actually made the report 'at least in part' for retaliatory motives." *Wenk*, 783 F.3d at 595. During her phone call to DCS Ms. Jones repeated L.H.'s threat to sue the school system and get an

advocate to get B.H.'s IEP changed. Then she asked the DCS worker not to put anything in the report about the IEP. The trier of fact could find that the inclusion of information in the phone call concerning threats of litigation against the school system and requests for IEP revisions is evidence of Defendant's motivation for making the call.

Additionally, the phone call to DCS was made one day after the meeting in which L.H. accused school officials of punishing B.H. because of his disability, asked for a reasonable accommodation, asked for changes to his IEP, and said that his IEP was not being followed, and she threatened to contact a lawyer and advocate. Furthermore, there is evidence that B.H.'s punishment was increased minutes after L.H.'s advocacy. Temporal proximity between the protected activity and adverse action may constitute evidence of causation. *A.C.*, 711 F.3d at 699 ("[When] the adverse action comes 'very close in time' after the exercise of protected activity, 'such temporal proximity . . . is significant enough' to meet the burden alone.").

Because Plaintiffs have established a prima facie case of retaliation, the burden shifts to Defendant to present a legitimate, nonretaliatory reason for its actions, and Plaintiffs must then show that those reasons were a pretext for retaliation. Defendant's stated reason for the DCS report is that Ms. Jones was required by law to report sexual abuse to DCS. Defendant also contends that Ms. Jones was concerned that L.H. was using drugs.

The burden now shifts to Plaintiffs to show that these reasons were pretextual. As for the report to DCS, Ms. Jones called to report sexual abuse just one day after the two meetings with L.H. The "abuse" of B.H. that Ms. Jones reported occurred several years prior to the call. She also mentioned that she was unsure if L.H. was giving B.H. his medication even though L.H. said that she was, and Ms. Jones commented that B.H. had many different babysitters. She stated that B.H.'s father, who was not in the home, had substance abuse issues, and she was "suspicious" that

13

L.H. was abusing drugs based on her "erratic" behavior during the meeting concerning the playground incident. At the end of this phone call, she complained that L.H. had stated that she was going to sue the school system and that she was going to get an advocate and wanted B.H.'s IEP changed. Ms. Jones then asked DCS not to put anything in the report about the IEP.

The trier of fact could find that Defendant's reliance on Tennessee's mandatory reporting law is pretextual in that Ms. Jones did not make a report of previously unreported sexual abuse but, instead, reported that B.H.'s parents were using/abusing drugs and did not give B.H. his medication.[10] The trier of fact could find that this was done in retaliation for L.H.'s threat to sue the school and her demand for a different IEP for B.H. As for L.H.'s purported drug usage, the trier of fact could find that Ms. Jones had no basis for making a report to DCS. The results of the drug test administered by DCS were negative. In making her report, Ms. Jones relied on L.H.'s alleged change in behavior between her first and second meetings with school officials. Ms. Jones described L.H.'s behavior as being "normal" during the first meeting and "erratic" during the second meeting. However, there is evidence that there was only ten minutes between these two meetings. The trier of fact could find that it would have been impossible for L.H. to go home, talk to her sister, call the school, return to the school, and take drugs and experience the effects in ten minutes.

Defendant attempts to rely on the "honest belief rule." Under the honest belief rule, a defendant can prevail on summary judgment even though the plaintiff has demonstrated a prima facie if the defendant can show that the decision to take the adverse action was based on its "reasonable reliance on the particularized facts that were before it at the time the decision was

---

[10] Defendant claims that Ms. Jones made the call to DCS to report the incident on the playground. However, the trier of fact could find that Ms. Jones' accusations centered around L.H. rather than the playground incident.

14

made." *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001). Here, Defendant contends that Ms. Jones had an honestly held belief that she was required to report the playground incident and L.H.'s "suspected" drug usage to DCS. However, as noted above, there is evidence in the record that Ms. Jones merely reported B.H.'s history of being sexually abused and was more concerned about L.H.'s demands that his IEP be changed and her threat to hire an attorney. The trier of fact could also find that Ms. Jones did not honestly believe L.H. was using drugs. Therefore, the honest belief rule does not defeat Plaintiffs' claims. Because there are disputed issues of material fact regarding Defendant's real motivation in reporting L.H. to DCS, summary judgment on Plaintiffs' retaliation claims under the ADA and § 504 is not appropriate.

Plaintiffs have also brought a retaliation claim under the First Amendment. The *Wenk* Court explained what is necessary to establish a First Amendment retaliation claim.

> We analyze First Amendment retaliation claims under a burden-shifting framework. "A plaintiff must first make a prima facie case of retaliation," which has three elements: "(1) he engaged in constitutionally protected speech or conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; [and] (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct." *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012) (internal quotation marks omitted); *see also Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). If the plaintiff establishes this prima facie case, "the defendants can avoid liability by showing that [they] would have taken the same action even in the absence of the protected conduct." *Gaspers* [*v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 412 (6th Cir. 2011)] (internal quotation marks omitted). "Once this shift has occurred, summary judgment is warranted if, in light of the evidence viewed in the light most favorable to the plaintiff, no reasonable juror could fail to return a verdict for the defendant." *Dye*, 702 F.3d at 294–95. "Unlike in the *McDonnell Douglas* burden-shifting framework, the burden does not shift back to a plaintiff to show pretext in First Amendment retaliation claims." *Id.* at 295.

*Wenk*, 783 F.3d at 593–94. In the present case, Plaintiffs have pointed to evidence in the record, as discussed above, from which the trier of fact could find that L.H. engaged in constitutionally

15

protected speech or conduct by advocating for B.H., an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct when the report was made to DCS, and the adverse action was motivated at least in part by the protected conduct.  There is also evidence that Ms. Jones would not have made the report to DCS if L.H. had not advocated for B.H.

The Court cannot say at this juncture that "no reasonable juror could fail to return a verdict for the defendant."  *See C.G. v. Cheatham Cty. Bd. of Educ.*, 2016 WL 1366671 at *1-2 (M.D. Tenn. Apr. 6, 2016) (denying summary judgment on the claim that the school principal retaliated against the parents of a special education student who "voiced concerns to school officials about proper implementation of the Section 504 plan" for their son by complaining "to the Tennessee Department of Human Services that [the son] was being emotionally abused" because there were "questions of fact as to whether it was reasonable for Defendant Roney to interpret the incidents reported to him as signs of emotional abuse").

Although Defendant is correct that the school system cannot be vicariously liable for Ms. Jones's actions, Defendant can be held liable if the school district itself is responsible for the First Amendment retaliation, as opposed to Ms. Jones individually.  *See Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 403 (6th Cir. 2010).  To do this, a plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [his] particular injury was incurred due to the execution of that policy." *Id.* "A 'custom' must 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Id.* That is, a plaintiff only has to show that the way things are routinely done gave rise to the violation of her constitutional rights.

Here, Defendant states that it has a "policy" to report all potential signs of child sexual abuse and that its policy goes well beyond "the force of law." As noted by Plaintiffs, the trier of fact could find that Defendant's policy includes reporting behaviors associated with a student's disability and making not well-founded accusations against a parent without ensuring that the school personnel making the report is not doing so for a retaliatory reason. Accordingly, the motion for summary judgment on Plaintiffs' First Amendment retaliation claim is also denied.

In summary, Defendant's motion for summary judgment is **DENIED** in its entirely.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: December 10, 2019.